UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

PEGGY HARLEY,                      :

                    Plaintiff,    :    08 Civ. 5791 (KBF)(HBP)

    -against-                 :    OPINION
                                        AND ORDER
ANN NESBY, et al.,                 :

                Defendants.    :

----------------------------------X


       PITMAN, United States Magistrate Judge:


I.  Introduction


       In my Opinion and Order dated December 12, 2011 (Docket
Item 65), I ordered plaintiff to pay defendants Shanachie Enter-
tainment Corporation and Vaughn Harper ("Shanachie," "Harper," or
collectively, the "Moving Defendants") reasonable attorneys' fees
and costs incurred in making their motion for sanctions dated
February 17, 2011 (Docket Item 58).  In that Order, I also
directed the Moving Defendants to submit (1) contemporaneous
billing records and the information necessary to evaluate the
reasonableness of their attorneys' billing rates and (2) invoices
for any costs that they have incurred.

       Balber Pickard Maldonado & Van Der Tuin, P.C. ("Balber
Pickard"), attorneys for defendant Shanachie, and Melvin L.

Reddick, Esq., attorney for defendant Harper, have made the required submissions (Docket Items 67 and 70).  For the reasons set forth below, (1) Balber Pickard is awarded $11,631.63 in fees and $459.36 in costs and (2) Reddick is awarded $1,072.50 in fees.

II.  <u>Facts</u>[1]

Plaintiff commenced this action to recover damages related to the alleged infringement of her musical work entitled "It Will Never Happen Again."  Plaintiff alleges that she pro-vided Harper with a copy of her ten-track album, which contained "It Will Never Happen Again," and, in retaliation for her refus-ing to work with Harper on a forthcoming production, Harper, together with defendants Ann Nesby, Timothy W. Lee, and several others, conspired to steal her work and re-titled it "I Apolo-gize." (Amended Complaint ("Am. Compl.") (Docket Item 4), 5).

I shall summarize the underlying discovery disputes between plaintiff and the Moving Defendants because they are relevant to the time periods for which the defendants can recover attorneys' fees and costs.

_____

[1]The facts underlying these fee applications are set forth in detail in my Opinion and Order dated December 12, 2011 (Docket Item 65).

A.    Shanachie's
      Discovery Requests

By Order dated March 23, 2010, the Honorable William H.
Pauley, III, United States District Judge, directed that all
discovery in the action be completed by July 30, 2010 (Scheduling
Order No. 5 dated July 30, 2010 (Docket Item 27)).  On April 9,
2010, Shanachie served interrogatories and requests for document
production on plaintiff (Ex. A to Declaration of Roger J.
Maldonado, Esq. in Support of Motion to Impose Sanctions, dated
Feb. 17, 2011 ("Maldonado Decl. attached to Mot. for Sanctions")
(Docket Item 59)).  After plaintiff failed to respond to these
discovery requests and to Shanachie's request to confer on the
matter, Judge Pauley held a discovery conference on June 24,
2010.  As a result of this conference, and by Order dated June
28, 2010, Judge Pauley directed plaintiff to serve responses to
Shanachie's discovery requests by July 30, 2010 and extended the
discovery deadline to November 5, 2010 (Ex. D to Maldonado Decl.
attached to Mot. for Sanctions; see also Discovery Order dated
June 28, 2010 (Docket Item 39)).  Although plaintiff served a
response to Shanachie's discovery requests on July 24, 2010, she
did not produce any documents and her response was, therefore,
deficient (see Ex. E to Maldonado Decl. attached to Mot. for
Sanctions).

3

On September 7, 2010, after again attempting to confer with plaintiff about the discovery requests, Shanachie wrote to me and cited the deficiencies in plaintiff's response to its requests (Ex. G to Maldonado Decl. attached to Mot. for Sanctions).  Shanachie then sought, pursuant to Rule 2.A of my Individual Practice Rules,[2] an informal conference to resolve the discovery dispute between Shanachie and plaintiff.

B.   Harper's
     Discovery Requests

On July 22, 2010, Harper served interrogatories and requests for document production on plaintiff (Ex. C to Declaration of Melvin Reddick, Esq. in Support of Motion to Impose Sanctions, dated Feb. 17, 2011 ("Reddick Decl. attached to Mot. for Sanctions") (Docket Item 60)).  Plaintiff did not respond to these discovery requests.  On September 2, 2010, counsel for Harper called and subsequently wrote to plaintiff to confer about the matter and to inform plaintiff that if she did not respond to the discovery requests by September 10, 2010, Harper would ask the Court to compel plaintiff's response (Ex. D to Reddick Decl. attached to Mot. for Sanctions).  Although plaintiff responded on

---

[2]Rule 2.A of my Individual Practice Rules incorporates Local Civil Rule 37.2 and requires an informal conference to resolve discovery disputes before the making of a formal motion.

September 7, 2010 and informed Harper's counsel that she would respond to the discovery requests by September 17, 2010, plaintiff did not respond on that date (Ex. E to Reddick Decl. attached to Mot. for Sanctions).

On September 21, 2010, counsel for Harper wrote to me regarding plaintiff's failure to respond and requested, pursuant to Rule 2.A of my Individual Practice Rules, an informal conference to resolve the discovery dispute between Harper and plaintiff (Ex. F to Reddick Decl. attached to Mot. for Sanctions).

C.   Remaining Pertinent
     <u>Discovery Proceedings</u>

On September 24, 2010, plaintiff filed her Rule 26(a)(1) disclosures.  No documents were attached to those disclosures, and they largely repeated the allegations made in plaintiff's amended complaint (Ex. H to Maldonado Decl. attached to Mot. for Sanctions; <u>see</u> <u>also</u> Initial Disclosures (Docket Item 41)).  On that date, plaintiff also (1) sent Shanachie a second copy of her earlier deficient responses to Shanachie's document requests (Ex. I to Maldonado Decl. attached to Mot. for Sanctions; <u>see</u> <u>also</u> Response to Shanachie Entertainment Corporation's First Request to Plaintiff for Production of Documents (Docket

Item 42)) and (2) responded to Harper's interrogatories,[3] but not
to his document requests (Ex. G to Reddick Decl. attached to Mot.
for Sanctions; see also Plaintiff's Response to Vaughn Harper's
First Set of Interrogatories to Plaintiff (Docket Item 40)).

To resolve the issues raised by counsel for Shanachie
and Harper, I scheduled a telephonic discovery conference for
October 18, 2010 (Ex. I to Reddick Decl. attached to Mot. for
Sanctions).  On that date, all parties appeared on the conference
call at the designated time except plaintiff.  My courtroom
deputy attempted to call plaintiff, but was only able to reach
her voicemail.  In order to give plaintiff, who was and is
proceeding pro se, an opportunity to respond to the claimed
deficiencies in her discovery responses, I advised defendants
that I would issue an Order to Show Cause.

Later, during the afternoon of October 18, 2010, I
received a letter from plaintiff, which was dated October 5,
2010, stating that she preferred an in-court conference to
resolve the outstanding discovery disputes (Ex. J to Reddick
Decl. attached to Mot. for Sanctions; see also Letter of Plain-
tiff dated Oct. 5, 2010 (Docket Item 43)).  I held the in-person

---

[3]Plaintiff responded with either "public knowledge,"
"objection," "see amended complaint" or "see original motion" to
eleven of Harper's nineteen interrogatories.

conference sought by plaintiff on October 29, 2010; plaintiff, however, did not appear.  Because plaintiff had received notice of the conference, I proceeded without her.  As a result of this conference, I issued an Order directing plaintiff to (1) produce all non-privileged documents requested by Shanachie and to provide a schedule of all documents withheld on the ground of privilege and (2) provide responses to the interrogatories served by Harper, as well as produce all non-privileged documents requested by Harper and provide a schedule of all documents withheld on the grounds of privilege (Order dated Oct. 29, 2010 (Docket Item 45)).

        Plaintiff did not respond in any way to my Order, and counsel for Shanachie and Harper both requested another informal conference (Ex. M to Maldonado Decl. attached to Mot. for Sanc-tions).  I held the requested conference on December 10, 2010.  Plaintiff admitted having received my October 29, 2010 Order but stated that she was confused concerning her discovery obligations and the seemingly conflicting schedules set by myself and Judge Pauley.  She then requested additional time to seek counsel to assist her in responding to the discovery requests.  I advised plaintiff that she was already in violation of two Court Orders and the potential consequences of such violations.  I also explained to plaintiff that she was and is always free to seek

the assistance of counsel, but that this action, which she had commenced nearly two and one-half years prior to that conference, must go on regardless of whether she has counsel.  With a strong warning of the consequences that could result if plaintiff failed to respond to the discovery requests, I granted plaintiff a final extension of time to comply with my October 29, 2010 Order (Order dated Dec. 10, 2010 (Docket Item 49)).

Plaintiff served revised responses to the discovery requests on or about December 29, 2010 (Ex. O to Maldonado Decl. attached to Mot. for Sanctions; Ex. P to Reddick Decl. attached to Mot. for Sanctions).  These responses, however, failed to comply with my October 29, 2010 Order in that plaintiff continued to assert privilege in response to nearly every document request, suggesting that plaintiff was persisting in her attempt to withhold documents until trial.[4]  Counsel for the Moving Defendants jointly requested yet another informal conference on the basis of plaintiff's deficient revised responses (Ex. P to

---

[4]For example, plaintiff asserted that "[d]ocuments concerning damages are privileged and subject to protection as trial preparation materials [p]ursuant to Rule 26(b)(5) and Rule 26(b)" and "[l]ead sheets for the musical composition 'It Never Happen Again' [sic] as well as 'I Apologize' will be available at trial.  Lead sheets are privileged and subject to trial" (Ex. O to Maldonado Decl. attached to Mot. for Sanctions).

Maldonado Decl. attached to Mot. for Sanctions).  The conference was scheduled for January 28, 2011.

On January 28, 2011, approximately twenty minutes before the scheduled start time of the conference, my staff received a call from someone who identified herself as plain-tiff's friend.  This person stated that plaintiff had become ill on her way to the courthouse and would be unable to attend the conference.[5]  During the conference, I informed counsel that I believed the best way to proceed was for defendants to make a formal Rule 37 motion.  I memorialized this by an Order dated January 31, 2011 (Order dated Jan. 31, 2011 (Docket Item 52)).

On or about January 31, 2011, plaintiff served further revised discovery responses, but these responses also failed to comply with my October 29, 2010 Order.  Specifically, although plaintiff did produce some new documents, her revised responses clearly indicated that she was still withholding documents that she intended to use at trial.[6]

---

[5]By letter served on February 1, 2011, plaintiff provided documentation which purports to establish that she was at the Mount Sinai Hospital of Queens on January 28, 2011 (Letter dated Jan. 20, 2011 (Docket Item 53)).

[6]For example, in plaintiff's responses to Shanachie's document request, she stated:  "Please find attached a few documents that are currently available" and "Lead sheets . . . is [sic] currently in preparation [] I expect to use them at trial" (Ex. R to Maldonado Decl. attached to Mot. for Sanctions).  In
                                                    (continued...)

The Moving Defendants subsequently served a motion seeking sanctions against plaintiff on February 17, 2011 (Docket Item 58).  The motion for sanctions was granted on December 12, 2011 (Docket Item 65).

D.   <u>Fee Applications</u>

By papers dated December 22, 2011, Balber Pickard seeks to recover the sum of $17,497.50 in fees and $499.53 in costs (Declaration of Roger J. Maldonado in Support of Shanachie Entertainment Corporation's Request for Reimbursement of its Reasonable Expenses and Attorneys' Fees, dated Dec. 22, 2011 ("Maldonado Decl.") (Docket Item 67), ¶ 37).  This figure is comprised of the following:  (1) $6,770.50 in fees and $188.67 in costs for the period from May 24, 2010 through October 29, 2010; (2) $4,661.00 in fees and $126.24 in costs for the period from November 1, 2010 through January 31, 2011 and (3) $6,066.00 in fees and $184.62 in costs for February 2011 (Maldonado Decl. ¶¶ 6-8, <u>see also</u> Maldonado Decl. at 4-7).  The first two time periods cover Balber Pickard's efforts to compel plaintiff to

---

[6](...continued)
plaintiff's responses to Harper's document request, she also refused to produce the requested press kit, stating "[o]bjection, I do not wish to provide the defendants with further [a]ccess to my [w]orks" (Ex. S to Reddick Decl. attached to Mot. for Sanctions).

respond to Shanachie's discovery requests; the third time period covers Balber Pickard's efforts in preparing, serving and filing the motion for sanctions against plaintiff (Maldonado Decl. ¶¶ 4-8).

In support of its fee application, Balber Pickard has submitted billing records (see Exs. A-E to Maldonado's Decl.). On the basis of these records, Balber Pickard contends the following. From May 24, 2010 through October 29, 2010, (1) Roger J. Maldonado, Esq. spent 16 hours working on the matter and seeks to compensated at an hourly rate of $395.00 (Maldonado Decl. ¶¶ 11, 18-19) and (2) Jane Y. Ginns, Esq. spent 1.7 hours working on the matter and seeks to be compensated at an hourly rate of $265.00 (Maldonado Decl. ¶¶ 12, 18-19). From November 1, 2010 through January 31, 2011, Maldonado spent 11.8 hours working on the matter and seeks to be compensated at his same hourly rate of $395.00 (Maldonado Decl. ¶¶ 11, 22-23). In February 2011, (1) Maldonado spent 10.8 hours working on the matter and again seeks to be compensated at his $395.00 hourly rate (Maldonado Decl. ¶¶ 11, 26-27) and (2) Ginns spent 6.8 hours working on the matter and seeks to be compensated at her same hourly rate of $265.00 (Maldonado Decl. ¶¶ 12, 26-27).

In papers dated January 11, 2012, Melvin L. Reddick, Esq. seeks to recover the sum of $6,060.00 in fees; Reddick does

11

not seek any costs (see Declaration of Melvin L. Reddick in
Support of Vaughn Harper's Request for Reinbursement [sic] of his
Attorney's Fees, dated Jan. 11, 2012 ("Reddick Decl.") (Docket
Item 70), ¶¶ 15-17).  Reddick breaks down his overall figure in
the same manner as Balber Pickard, seeking (1) $2,000.00 for the
period from July 6, 2010 through October 29, 2010; (2) $2,500.00
for the period from November 1, 2010 through January 31, 2011 and
(3) $1,560.00 for February 2011 (Reddick Decl. ¶¶ 15-17).

　　　　In support of his fee application, Reddick has submit-
ted billing records (Ex. A to Reddick Decl.).  On the basis of
these records, Reddick contends the following.  From July 6, 2010
through October 29, 2010, Reddick spent 6.6 hours working on the
matter for which he seeks an hourly rate of $300.00 (Reddick
Decl. ¶¶ 12, 15).  From November 1, 2010 through January 31,
2011, Reddick spent 8.3 hours working on the matter and seeks the
same hourly rate of $300.00 (Reddick Decl. ¶¶ 12, 16).  In
February 2011, Reddick spent 5.2 hours working on the matter and,
again, seeks an hourly rate of $300.00 (Reddick Decl. ¶¶ 12, 17).

    E.   Plaintiff's Opposition
         to the Fee Applications

        In various papers submitted to the Court since my
December 12, 2011 Opinion and Order, plaintiff makes the follow-
ing arguments in opposition to the fee applications.

        First, plaintiff contends that Reddick's fee applica-
tion is not timely (see Affidavit of Plaintiff Peggy Harley in
Support of Motion of Disqualification/Recusal Orders and a Stay
Affidavit of Truth [sic], dated Dec. 28, 2011 ("Harley Aff. in
Supp. of Mot. for Disqualification/Recusal") (Docket Items 72 and
73), 16; Affidavit of Truth of Plaintiff Peggy Harley in Opposi-
tion to Sanctions for Monetary Request Thru the Opinion & Order
of Magistrate Henry B. Pitman for Shanachie Entertainment Corp. &
Vaughn Harper [sic], dated Jan. 13, 2012 ("Harley Aff. in Opp. to
Sanctions") (Docket Item 74), 8; Affidavit of Truth of Plaintiff
Peggy Harley re: Transcript for January 12, 2012 [sic], dated
Jan. 20, 2012 ("Harley Aff. re: Jan. 12, 2012 Conf.") (Docket
Item 78), 1-2).  Plaintiff also contends that Reddick "has not
submitted one receipt, billing or invoice to substantiate his
claims for [] sanction[s] . . . . " and requests that she be able
"to subpoena the billings of [Reddick] and his client . . . . "
(Harley Aff. in Opp. to Sanctions at 8-9).

                              13

Second, plaintiff raises arguments that have already been considered in my Opinion and Order dated December 12, 2011. Specifically, plaintiff again contends that:  (1) the initial motion papers for sanctions were deficient because the Moving Defendants failed to serve their motion by the February 18, 2011 deadline set forth in my January 31, 2011 Order (<u>see</u> Harley Aff. in Opp. to Sanctions at 4-5); (2) I am biased against her, as evidenced by my statement at the January 28, 2011 conference that "I share [defendants'] frustration with this case" (<u>see</u> Harley Aff. in Supp. of Mot. for Disqualification/Recusal at 8-9; Harley Aff. in Opp. to Sanctions at 4) and (3) the initial motion papers for sanctions were deficient because they lacked certain signa-tures (<u>see</u> Harley Aff. in Opp. to Sanctions at 6-7).

Third, plaintiff contends that I ordered her to pay specific monetary amounts to counsel for Shanachie and Harper "without so much as the defendant[s] producing one receipt, invoice, or shedule [<u>sic</u>] of fees in their joint motion [instead] allowing them to later provide them" (<u>see</u>  Harley Aff. in Opp. to Sanctions at 9-10).

Finally, plaintiff contends that her financial situa-tion precludes her from paying fees and costs to the Moving Defendants and that the Court failed to make a determination concerning her ability to pay prior to granting the motion for

14

sanctions (<u>see</u> Harley Aff. in Supp. of Mot. for Disqualifica-
tion/Recusal at 13-14; Harley Aff. in Opp. to Sanctions at 8, 10-
12).

III. <u>Analysis</u>

    Plaintiff's opposition to the fee applications, as set
forth above, must be rejected.  With respect to the timeliness of
Reddick's fee application, while plaintiff is correct that
Reddick submitted his application and corresponding billing
records approximately a week late, plaintiff does not demonstrate
how she has been prejudiced by the late submission.  Absent such
a showing, and given plaintiff's own history of delay, I shall
overlook the tardiness of Reddick's submission.

    With respect to plaintiff's arguments raised for the
second time -- <u>i.e.</u>, the tardiness of the initial motion papers
for sanctions, the lack of certain signatures contained therein
and my putative bias against plaintiff -- those arguments have
already been considered and rejected as meritless in my December
12, 2011 Opinion and Order (<u>see</u> Opinion and Order dated Dec. 12,
2011 (Docket Item 65), 23, 26-27).

    Next, plaintiff is incorrect in her contention that I
ordered her to pay specific monetary amounts to counsel without
submission of contemporaneous billing records.  In my Opinion and

Order dated December 12, 2011, I made no determinations as to the <u>amount</u> of fees and costs to be paid by plaintiff to the Moving Defendants.  That question -- <u>i</u>.<u>e</u>., whether counsels' fee applications are reasonable, and, thus the ultimate amount of fees and costs to be paid to the Moving Defendants -- is precisely what is addressed by <u>this</u> Opinion and Order.  Additionally, there is no requirement under the Federal Rules of Civil Procedure or any body of law that a party moving for sanctions must attach billing records and invoices for costs to their initial motion.  Such a submission would have been premature because liability for fees had not been decided when the motion was initially made.

Finally, plaintiff's contention that the Court failed to consider her financial situation in awarding the Moving Defendants sanctions is without merit.  Plaintiff merely states in a conclusory fashion that she is unable to pay fees and costs to the Moving Defendants; she provides no information or documentation whatsoever to substantiate this contention.

I shall now turn to the issue of whether the fee applications in this case are reasonable.

A.   <u>Rule 37(b)(2)</u>

Rule 37(b)(2) provides that a court may impose sanctions against a party that "fails to obey an order to provide or

16

permit discovery . . . . "  <u>Salahuddin v. Harris</u>, 782 F.2d 1127,

1132-33 (2d Cir. 1986).  With respect to payment of expenses,

Rule 37(b)(2)(C) provides that:

> Instead of or in addition to the orders above, the
> court must order the disobedient party . . . to pay the
> reasonable expenses, including attorney's fees, caused
> by the failure, unless the failure was substantially
> justified or other circumstances make an award of
> expenses unjust.

F.R.C.P. 37(b)(2)(C); <u>see also</u> 8B Charles A. Wright, Arthur R.

Miller & Richard L. Marcus, <u>Federal Practice & Procedure</u> § 2289,

at 541-42 (3d ed. 2010) ("Rule 37(b)(2) applies only if there has

already been an order [and] [t]he expenses that may be recovered

under it are those 'caused by the failure' to obey an order and

therefore do not include the expense of obtaining the order

itself.").

Thus, the Moving Defendants' are entitled to recover

expenses caused by plaintiff's failure to comply with the Court's

orders directing her to produce responsive discovery to the

respective discovery requests -- but not the expenses incurred in

obtaining the court orders themselves.  Specifically, with

respect to Shanachie, plaintiff has failed to comply with  (1)

Judge Pauley's Order dated June 28, 2010 (Discovery Order dated

June 28, 2010 (Docket Item 39)) and (2) my Order dated October

29, 2010 (Discovery Order dated Oct. 29, 2010 (Docket Item 45)).

As a result, Balber Pickard may recover expenses incurred <u>after</u> the issuance of Judge Pauley's June 28, 2010 Order.[7]  This limitation results in the exclusion of Balber Pickard's requests for fees and costs for the period from May 24, 2010 through June 28, 2010 and reduces its recoverable fees and costs by $2,291.00[8] and $32.97, respectively.[9]  After making these deductions, the maximum potential recovery for Balber Pickard is $15,206.50 in fees and $466.56 in costs.

With respect to Harper, plaintiff has failed to comply with my Order dated October 29, 2010 (Order, dated Oct. 29, 2010 (Docket Item 45)).  Thus, Reddick may only recover expenses

---

[7]Expenses incurred by Shanachie in connection with obtaining my Discovery Order dated October 29, 2010 were caused by plaintiff's failure to comply with Judge Pauley's earlier Discovery Order dated June 28, 2010.

[8]Because the time entry listed for June 28, 2010 reads "Review Court Order [on] Discovery/Pre-trial proceedings," I do not exclude it from Balber Pickard's maximum potential recovery at this point in the analysis because the entry reflects time that was spent on the case after the issuance of Judge Pauley's Order.  In any event, I note that the time entry reflects a <u>de minimis</u> amount of fees, <u>i.e.</u>, $79.00 for .20 hours of work (<u>see</u> Ex. A to Maldonado Decl.).

[9]Balber Pickard represents that Exhibits A and B contain all of the time entries for which Shanchie seeks reimbursement from plaintiff (<u>see</u> Maldonado Decl. ¶¶ 10, 12, 17).  Additionally, Maldonado's declaration lists the costs for which Shanachie seeks reimbursement and Exhibit E provides supporting documentation (<u>see</u> Maldonado Decl. ¶¶ 15-16, 20(a)-(d), 24(a)-(b), 28).  Thus, I have used these exhibits to deduct the fees and costs incurred by Balber Pickard from May 24, 2010 until the issuance of Judge Pauley's Discovery Order dated June 28, 2010.

incurred <u>after</u> the issuance of my October 29, 2010 Order.  This
reduces the amount potentially recoverable by Reddick by
$2,000.00 and results in a maximum potential recovery of
$4,060.00.

    B.  <u>Reasonable Hourly Rate</u>

        In calculating attorneys' fee awards, "[b]oth [the
Second Circuit] and the Supreme Court have held that the lodestar
-- the product of a reasonable hourly rate and the reasonable
number of hours required by the case -- creates a 'presumptively
reasonable fee.'"  <u>Millea v. Metro-North R. Co.</u>, 658 F.3d 154,
166 (2d Cir. 2011), <u>citing</u> <u>Perdue v. Kenny A. ex rel. Winn</u>, ---
U.S. ----, 130 S.Ct. 1662, 1673 (2010) <u>and</u> <u>Arbor Hill Concerned
Citizens Neighborhood Assoc. v. Cnty. of Albany</u>, 522 F.3d 182,
183 (2d Cir. 2008).

        The hourly rates used in determining a fee award should
be "what a reasonable, paying client would be willing to pay."
<u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of
Albany</u>, <u>supra</u>, 522 F.3d at 184.  This rate should be "in line
with those [rates] prevailing in the community for similar
services by lawyers of reasonably comparable skill, experience
and reputation."  <u>Blum v. Stenson</u>, 465 U.S. 886, 895-96 n.11
(1984); <u>accord</u> <u>Reiter v. MTA New York City Transit Auth.</u>, 457

F.3d 224, 232 (2d Cir. 2006).  In determining a reasonable hourly rate, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties.  <u>Farbotko v. Clinton Cnty. of New York</u>, 433 F.3d 204, 208-09 (2d Cir. 2005).  The court is also free to rely on its own familiarity with prevailing rates in the District.  <u>A.R. ex rel. R.V. v. New York City Dep't of Educ.</u>, 407 F.3d 65, 82 (2d Cir. 2005); <u>Miele v. New York State Teamsters Conf. Pension & Ret. Fund</u>, 831 F.2d 407, 409 (2d Cir. 1987).

"The Second Circuit has [also] held that in determining the reasonable hourly rate, district courts should [] assess case-specific considerations, including the factors articulated by the Fifth Circuit in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 92-93 . . . (1989)."[10]  <u>See Dunn v. Advanced Credit Recovery</u>, 11 Civ. 4023 (PAE) (JLC), 2012

---

[10]The factors set forth in <u>Johnson v. Ga. Highway Express, Inc.</u> include:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's customary fee; (6) whether the attorney's fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

WL 676350 at *5 (S.D.N.Y. Mar. 1, 2012) (Cott, M.J.) (Report and
Recommendation), <u>adopted</u>, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012)
(Englemayer, D.J.).  However, because of "the 'presumptive
reasonability' of the lodestar method . . . 'absent extraordinary
circumstances, failing to calculate it as a starting point is
legal error.'"  <u>T.K. ex rel. L.K. v. New York City Dept. of
Educ.</u>, 11 Civ. 3964 (JPO), 2012 WL 1107660 at *5 n.4 (S.D.N.Y.
Mar. 30, 2012) (Oetken, D.J.), <u>quoting</u> <u>Millea v. Metro-North R.
Co.</u>, <u>supra</u>, 658 F.3d at 167.

        Thus, I first use the lodestar method to calculate the
attorneys' fees awards in this case, and then, if necessary, I
will adjust that award should any case-specific considerations
require such a result.  See <u>Dunn v. Advanced Credit Recovery</u>,
<u>supra</u>, 2012 WL 676350 at *5 n.8; <u>Ceglia v. Zuckerberg</u>, No. 10-CV-
005689A(F), 2012 WL 503810 at *4 n.6 (W.D.N.Y. Feb. 14, 2012).

        Finally, in all cases, "the fee applicant has the
burden of showing by 'satisfactory evidence -- in addition to the
attorney's own affidavits' -- that the requested hourly rates are
the prevailing market rates."  <u>Farbotko v. Clinton Cnty. of New
York</u>, <u>supra</u>, 433 F.3d at 209, <u>quoting</u> <u>Blum v. Stenson</u>, <u>supra</u>, 465
U.S. at 895-96 n.11.  In determining reasonable hourly rates, a
court should first examine the attorneys' experience.  <u>Kahlil v.
Original Old Homestead Rest., Inc.</u>, 657 F. Supp. 2d 470, 475

(S.D.N.Y. 2009) (Holwell, D.J.), <u>citing</u> <u>Marisol A. ex rel. Forbes</u>
<u>v. Giuliani</u>, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (Ward,
D.J.).

      1.   Balber Pickard Maldonado
          <u>& Van Der Tuin, P.C.</u>

     Maldonado and Ginns were the attorneys at Balber
Pickard who worked on this matter.  Maldonado is a 1981 graduate
of Yale Law School, where he was a member of the school's Board
of Directors of Barrister's Union and a Barrister's Union Prize
Trial finalist.  He is admitted to the New York Bar, the Southern
and Eastern Districts of New York and the United States Court of
Appeals for the First and Second Circuits.  He has been practic-
ing law for approximately thirty years, with his practice focus-
ing primarily on complex civil litigation concerning commercial
and real estate transactions and copyright and intellectual
property litigation.  He has been a member of Balber and Pickard
since August 1996, and prior to that, he worked at Teitelbaum,
Hiller, Rodman, Paden & Hibsher, P.C. for approximately eight
years and the Brooklyn Legal Services Corporation for approxi-
mately seven years.

     Maldonado is also a member of the Departmental Disci-
plinary Committee of the First Department of the New York Appel-

late Division, a member of the Board of Directors of the New York Community Trust, a referee of the New York State Commission on Judicial Conduct and a member of the New York City Bar Association. He was previously a member of the Mayor's Advisory Committee on the Judiciary (from 2002 through 2005) and a co-chair of the Real Estate and Probate Litigation Committee of the American Bar Association (from 2002 through 2005) (see Maldonado Decl. ¶¶ 31-32; Ex. F attached to Maldonado Decl.). Maldonado seeks to be compensated at the rate of $395.00 per hour (Maldonado Decl. ¶ 11). Plaintiff does not challenge this rate.

Ginns graduated from the George Washington University School of Law with honors in 2005. Ginns was a Dean's Fellow (Legal Research & Writing Student Instructor) as well as a member of the Moot Court team, the Alternative Dispute Resolution Skills Board, the Dean Search Committee and the Student Bar Association. She is admitted to the New York Bar and the Illinois Bar. From June 2008 through November 2011, Ginns was a litigation associate at Balber Pickard, with her practice focusing primarily on complex commercial litigation concerning fraud, securities, copyright and white collar criminal matters. Prior to her position at Balber Pickard, Ginns was a litigation associate at Freeborn & Peters LLP for approximately two years, with her practice focusing primarily on complex commercial litigation

23

concerning bankruptcy, fraud, antitrust and white collar criminal matters.  She was also a member of the Immigration Litigation Committee of the American Bar Association from 2009 through 2011 (see Maldonado Decl. ¶¶ 31, 33; Ex. G attached to Maldonado Decl.).  Ginns seeks to be compensated at the rate of $265.00 per hour (Maldonado Decl. ¶ 12).  Plaintiff does not challenge this rate.

Balber Pickard, a firm comprised of twelve lawyers, represents in its fee application that its rates are "squarely within the average range of rates charged by New York City firms of between 10 to 29 lawyers" (see Maldonado Decl. ¶ 35).  In support of this contention, Balber Pickard provides excerpts from a June 1999 national survey that was used by the firm to estab-lish its rates in accordance with the average range of rates charged by New York City law firms comprised of 10 to 29 lawyers (see Ex. H to Maldonado Decl.).

The rates sought by Balber Pickard for Maldonado and Ginns are clearly reasonable in light of their respective educa-tional and professional backgrounds.  Maldonado has 30 years of experience as an attorney within New York and his practice has focused on intellectual property litigation.  In Harrell v. Van Der Plas, 08 Civ. 8252 (GEL), 2009 WL 3756327 at *6 (S.D.N.Y. Nov. 9, 2009) (Lynch, then D.J., now Cir. J.), the court found

24

$400.00 per hour reasonable for an attorney with approximately twenty years of experience in copyright and trademark cases. Similarly, in <u>Diplomatic Man, Inc. v. Brown</u>, 05 Civ. 9069 (JSR), 2007 WL 2827125 at *2 (S.D.N.Y. Sept. 28, 2007) (Rakoff, D.J.), the court found (1) $440.00 per hour reasonable for an attorney with twenty-three years of experience in intellectual property cases and (2) $315.00 per hour reasonable for an eighth-year associate with experience in intellectual property cases. Finally, in <u>Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp.</u>, 04 Civ. 5002 (JSR), 2005 WL 2063819 at *4 (S.D.N.Y. Aug. 24, 2005) (Rakoff, D.J.), the court found $395.00 to $485.00 per hour reasonable for partners' work and $180.00 to $265.00 per hour reasonable for associates' work because "higher rates have been found reasonable for experienced intellectual property litigators in New York City, given the complexity of the work."  Thus, I find Maldonado's requested rate of $395.00 per hour consistent with the prevailing rates in this District for intellectual property litigation, and, therefore, reasonable.[11]

---

[11]<u>See also</u> <u>Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag AG</u>, 04 Civ. 2983 (DLC) (KNF), 2006 WL 5804603 at *6 (S.D.N.Y. Dec. 11, 2006) (Fox, M.J.) (Report and Recommendation) (approving billing rates of $490.00-$540.00 per hour for partner in trademark infringement case), <u>adopted</u>, 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007) (Cote, D.J.); <u>Gucci America, Inc. v. Duty Free Apparel, Ltd.</u>, 315 F. Supp. 2d 511, 525
(continued...)

Ginns has approximately five to six years of general experience as an attorney in Chicago and New York, with experience in intellectual property litigation.  Additionally, as a mid-level associate assigned to the case, I presume that she worked at the direction of and under the supervision of Maldonado.  A rate of $265.00 per hour is reasonable in this District for an associate of Ginns' seniority and experience.  As noted above, the court in Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp., supra, 2005 WL 2063819 at *4 found $180.00 to $265.00 per hour reasonable for associates' work.  Additionally, a range of $215.00 to $330.00 for intellectual property associates has also been found reasonable in this District for the billing of associates' time.  See Stevens v. Aeonian Press, Inc., supra, 2002 WL 31387224 at *5.  Finally, in Yurman Designs, Inc. v. PAJ, Inc., supra, 125 F. Supp. 2d at 58, the court found that an

---

[11](...continued)
(S.D.N.Y.) (approving billing rate of $425.00 per hour for a partner at a New York City law firm in trademark infringement case), amended in part on other grounds, 328 F. Supp. 2d 439 (S.D.N.Y. 2004) (Marrero, D.J.); Stevens v. Aeonian Press, Inc., 00 Civ. 6330 (JSM), 2002 WL 31387224 at *5 (S.D.N.Y. Oct. 23, 2002) (Martin, D.J.) (approving billing rate of $460.00 per hour for partners at a Manhattan firm in copyright infringement case); Yurman Designs, Inc. v. PAJ, Inc., 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000) (Sweet, D.J.) (approving average billing rate of $520.69 per hour for a partners at mid-sized Manhattan firm in copyright and trademark infringement case), aff'd, 29 F. App'x 46 (2d Cir. 2002).

average associate billing rate of $278.50 per hour was reasonable in a copyright and trademark infringement case.  Thus, I find Ginns' requested rate of $265.00 per hour consistent with the prevailing rates in this District for intellectual property litigation, and, therefore, reasonable.[12]

### 2.  Melvin L. Reddick, Esq.

Reddick is a 1976 graduate of the University of Wisconsin Law School.  He is admitted to the Wisconsin Bar, the Florida Bar and the New York Bar.  He has been practicing law for approximately thirty-five years, with his practice focusing primarily on sports and entertainment law.  Reddick has been in private practice since 1996, and prior to that, he worked at Don King Productions for approximately a year, CBS Sports for approximately fourteen years, CBS Records for approximately four years, the National Association of Broadcasters for approximately a year and the Kenosha County District Attorney's Office in Wisconsin for approximately two years (Reddick Decl. ¶ 10).  Reddick seeks

---

[12]See also Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag AG, supra, 2006 WL 5804603 at *6 (approving billing rates of $400.00-$440.00 per hour for associate in trademark infringement case); Gucci America, Inc. v. Duty Free Apparel, Ltd., supra, 315 F. Supp. 2d at 525 (approving billing rate of $290.00 per hour for an associate at a New York City law firm in trademark infringement case).

to be compensated at the rate of $300.00 per hour (Reddick Decl. ¶ 12).  Plaintiff does not challenge this rate.

For the same reasons that $395.00 per hour is a reasonable hourly rate for Maldonado, so too is $300.00 per hour for Reddick.  Reddick has over 30 years of experience as an attorney, much of which was spent within New York.  Additionally, his practice has largely focused on sports and entertainment litigation.  Thus, I find Reddick's requested rate of $300.00 per hour consistent with the prevailing rates in this District, and, therefore, reasonable.

C.    Reasonable
      Number of Hours

The Honorable Loretta A. Preska, United States District Judge, has summarized the factors to be considered in assessing the reasonableness of the hours claimed in a fee application:

> To assess the reasonableness of the time expended by an attorney, the court must look first to the time and work as they are documented by the attorney's records.  See Forschner Group, Inc. v. Arrow Trading Co., Inc., No. 92 Civ. 6953 (LAP), 1998 WL 879710, at *2 (S.D.N.Y. Dec. 15, 1998).  Next the court looks to "its own familiarity with the case and its experience generally . . . .  Because attorneys' fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court."  AFP Imaging Corp. v. Phillips Medizin Sys., No. 92 Civ. 6211 (LMM), 1994 WL 698322, at *1 (S.D.N.Y. Dec. 13, 1994) (quoting Clarke v. Frank, 960

28

F.2d 1146, 1153 (2d Cir. 1992) (quoting DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985))).

\*   \*   \*

Finally, billing judgment must be factored into the equation.  Hensley, 461 U.S. at 434; DiFilippo, 759 F.2d at 235-36.  If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours.  In re "Agent Orange" Products. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) (stating that "in cases in which substantial numbers of voluminous fee petitions are filed, the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'" (quoting Carey, 711 F.2d at 1146)); see also United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approving a percentage reduction of total fee award to account for vagueness in documentation of certain time entries).

Santa Fe Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002) (Preska, D.J.); accord Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997); Finch v. New York State Office of Children and Family Serv., 04 Civ. 1668 (SAS), 2012 WL 695419 at *3 & n.29 (S.D.N.Y. Mar. 5, 2012) (Scheindlin, D.J.); Sulkowska v. City of New York, 170 F. Supp. 2d 359, 365 (S.D.N.Y. 2001) (Schwartz, D.J.).

The party seeking fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable.  See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994), citing Hensley v. Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevolent Ass'n of New York v. City of New York, 97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31, 2003) (Scheindlin, D.J.), citing Blum v. Stenson, supra, 465 U.S. at 897.

      1.   Balber Pickard Maldonado
          & Van Der Tuin, P.C.

Balber Pickard has submitted contemporaneous billing records reflecting the time that its attorneys spent working on plaintiff's case from May 2010 through February 2011 (see Maldonado Decl. ¶¶ 10-17; see also Exs. A-E to Maldonado Decl.).  Balber Pickard breaks down the amount of time that its attorneys spent on various tasks into tenths of an hour segments (see Maldonado Decl. ¶¶ 11-12).  Specifically, Balber Pickard has submitted the following:  original time entries of Maldonado and Ginns for which Balber Pickard seeks reimbursement (see Maldonado Decl. ¶¶ 10-12; Exs. A and B to Maldonado Decl.); printouts from Balber Pickard's billing system of entered time entries with

respect to Shanachie (see Maldonado Decl. ¶¶ 13-14; Exs. C and D
to Maldonado Decl.); copies of monthly bills sent to Shanachie
and the supporting documentation for costs incurred by Balber
Pickard (see Maldonado Decl. ¶¶ 15-17; Ex. E to Maldonado Decl.).

Plaintiff does not challenge any specific entry or
group of entries.  Instead, her argument appears to be that
Balber Pickard and Reddick failed to submit time records with
their motion papers for sanctions and that submitting them after
their motion had been granted is insufficient to remedy this
purported deficiency (see Harley Aff. in Supp. of Mot. for
Disqualification/Recusal at 13-14; Harley Aff. in Opp. to Sanc-
tions at 9-10).  This argument, however, is meritless.  As
already discussed, there is no requirement under the Federal
Rules of Civil Procedure or any other body of law that a party
moving for sanctions must attach billing records and invoices for
costs to their initial motion.  Plaintiff also refers to the
Balber Pickard's and Reddick's billing records as "bogus;"
however, she offers nothing to substantiate this contention.

I first note that Balber Pickard seeks reimbursement
for only certain time entries billed to Shanachie throughout the
relevant time period (see Maldonado Decl. ¶¶ 14, 17; compare Exs.
A, B and E).  As a result of this, the universe of potentially

reimbursable time entries has been narrowed considerably at the
outset by Balber Pickard.

      After a review of the time records, however, I conclude
that a further reduction in the amount of hours for which Balber
Pickard seeks compensation is appropriate.  First, certain of
Balber Pickard's time entries are vague.  Several time entries
for Maldonado reflect correspondence or telephone calls concern-
ing generalized subject matters.[13]  Several other time entries
for Maldonado, as well as entries for Ginns, also reflect legal
research that was conducted concerning generalized subject
matters.[14]  Although plaintiff had been non-compliant with two

---

[13]See, for example, the following entries:  (1) August 11,
2010 ("Memorandum to R. Grass re[:] status and strategy"); (2)
August 17, 2010 ("Telephone conference with and memorandum to M.
Reddick re[:] discovery requests/court intervention") and (3)
October 29, 2010 ("Prepare for and appear in Court on discovery
disputes; Conference with M. Reddick re[:] above; Memorandum to
and form [sic] R. Grass re[:] above").

[14]For example, with respect to Maldonado, a number of time
entries read:  "Research re[:] privilege/compel production
issues" (Aug. 2, 2010); "Research re[:] discovery compliance"
(Aug. 13, 2010); "Research re[:] discovery demands/production"
(Aug. 16, 2010); "Draft letter to Court re[:] discovery dispute;
research re[:] above" (Sept. 7, 2010) and "Research re[:] motion
to dismiss complaint" (Nov. 18, 2010).  With respect to Ginns, a
number of time entries read:  "Research regarding possible
discovery sanctions" (Feb. 1, 2011); "Review and analyze case law
regarding sanctions for discovery violations" (Feb. 2, 2011);
"Research, review and analyze case law regarding award of
attorney fees for discovery noncompliance" (Feb. 9, 2011) and
"Research, review and analyze case law regarding proper sanctions
for non-compliance with discovery" (Feb. 14, 2011).

Discovery Orders for approximately seven months prior to the filing of the sanctions motion, and this necessarily caused Balber Pickard to expend fees throughout that time period in order to procure those court orders, there was only <u>one</u> document production request and <u>one</u> set of interrogatories at issue. Thus, it is difficult to tell whether the hours reflected in the vague time entries were reasonable or whether unnecessary or duplicative work was done on the matter.

   To compensate for these vague time entries, I conclude that both Maldonado's and Ginns' hours should each be cut by 15%. <u>See</u> <u>Kirsch v. Fleet St., Ltd.</u>, 148 F.3d 149, 172-73 (2d Cir. 1998) (affirming 20% reduction in billed time for vagueness and other deficiencies where many time entries merely read "letter to court," "staff conference" and "work on motion"); <u>Tucker v. Mukasey</u>, 03 Civ. 3106 (LTS)(FM), 2008 WL 2544504 at *1 (S.D.N.Y. June 20, 2008) (Swain, D.J.) (applying percentage reduction in hours billed on basis of vagueness because entries "fail[ed] to describe adequately the nature of the calls, the contents of the reports or documents, or the topics of discussions"); <u>Sabatini v. Corning-Painted Post Area Sch. Dist.</u>, 190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001) (finding descriptions such as "hearing prepara-tion," "telephone conference with client" and "review records" too vague).

33

Second, while Balber Pickard's time entries are broken down into tenths of an hour segments, Maldonado used block billing.  "While not prohibited, block billing has a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary."  Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG, 04 Civ. 3600 (SWK), 2005 WL 3099592 at *5 (S.D.N.Y. Nov. 17, 2005) (Kram, D.J.) (internal quotation marks omitted).  Here, in several of Maldonado's time entries, multiple tasks are aggregated without identification of how much time was spent on each task.[15]

While the use of block billing does not automatically compel an across-the-board reduction, see Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558 (GEL), 2008 WL 1166309 at *6 (S.D.N.Y. Apr. 7, 2008) (Lynch, the D.J., now Cir. J.), a further reduction in the amount of hours for which Balber Pickard seeks compensation is appropriate here.  Again, because the same discovery request -- i.e. one document production request and one

---

[15]See, for example, the following entries:  (1) October 18, 2010 for 2 hours; (2) October 29, 2010 for 2.30 hours; (3) December 10, 2010 for 3 hours; (4) January 3, 2011 for 1.30 hours; (5) January 28, 2011 for 2.50 hours; (6) January 31, 2011 for 1 hour; (7) February 9, 2011 for 4 hours; (8) February 16, 2011 for 3 hours and (9) February 17, 2011 for 2.50 hours.

set of interrogatories -- was at issue throughout the relevant
time period, it is difficult to assess whether the amount of
hours billed was reasonable or whether unnecessary or duplicative
work was done on the matter.

To compensate for the use of block billing in
Maldonado's time entries, I conclude that his hours should be cut
by an additional 10%.  See Alexander v. Amchem Prods., Inc., 07
Civ. 6441 (RJS), 2008 WL 1700157 at *8 n.8 (S.D.N.Y. Apr. 3,
2008) (Sullivan, D.J.) (collecting cases); see also Aiello v.
Town of Brookhaven, 94-CV-2622 (FB)(WDW), 2005 WL 1397202 at *3
(E.D.N.Y. June 13, 2005) (applying 10% reduction to billed hours
because of attorneys' "substantial" use of block billing); Molefi
v. Oppenheimer Trust, 03 CV 5631 (FB)(VVP), 2007 WL 538547 at *7
(E.D.N.Y. Feb. 15, 2007) (applying 15% reduction for block-
billing and excessive billing); Klimbach v. Spherion Corp., 467
F. Supp.2d 323, 332 (W.D.N.Y. 2006) (reducing 10% of hours billed
because of vagueness and block-billing); Sea Spray Holdings, Ltd.
v. Pali Fin. Grp., Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003)
(Marrero, D.J.) (applying 15% reduction for block billing and
excessive time entries).

With respect to costs, Balber Pickard seeks the follow-
ing amounts.  From the issuance of Judge Pauley's Discovery Order
dated June 28, 2010 through the issuance of my Discovery Order

dated October 29, 2010, Balber Pickard seeks $155.70 in costs[16] (see Maldonado Decl. ¶¶ 20(a)-(d), 21; Ex. E to Maldonado Decl.). This figure is comprised of $1.63 for postage and photocopies in August 2010, $1.52 for PACER costs in August 2010, $148.05 for Westlaw online research in August 2010 and $4.50 for travel to and from the courthouse in October 2010.  From the issuance of my Discovery Order dated October 29, 2010 through January 2011, Balber Pickard seeks $118.35 in costs[17] (see Maldonado Decl. ¶¶ 24(a)-(b), 25; Ex. E to Maldonado Decl.).  This figure is comprised of $4.50 for travel to and from the courthouse in December 2010, $107.91 for overnight courier service in January 2011, $4.50 for travel to and from the courthouse in January 2011 and $1.44 for PACER costs in January 2011.  Finally, Balber Pickard seeks $185.31 in costs[18] for February 2011 in connection

---

[16]This figure takes into account the initial reduction of costs for the time period from May 24, 2010 until the issuance of Judge Pauley's discovery Order dated June 28, 2010.

[17]In Maldonado's declaration, Balber Pickard states that it is seeking $126.24 in costs for the time period from November 1, 2011 through January 31, 2011.  This figure, however, does not correspond to the costs that are listed in the declaration for which Balber Pickard states that it is seeking reimbursement. The listed costs, instead, total $118.35.

[18]Again, Balber Pickard states that it is seeking one figure in costs, but that figure does not correspond to the costs listed in Maldonado's declaration.  For the February 2011 time period, Balber Pickard states that it is seeking $184.62 in costs (see Maldonado Decl. ¶ 24(a)-(b)).  The listed costs, however,

(continued...)

with the preparation, filing and serving of its motion for
sanctions (see Maldonado Decl. ¶¶ 28-29; Ex. E attached to
Maldonado Decl.).  This figure is comprised of $8.75 for photo-
copies and postage, $28.98 for overnight courier service, $47.85
for messenger service and $99.73 for Westlaw online research.
Overall, the adjusted maximum potential recovery for Balber
Pickard in costs is $459.36.

The reimbursement sought here is for routine costs
typically awarded to a party seeking attorneys' fees and costs.
See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of
Albany, 369 F.3d 91, 98 (2d Cir. 2004) (approving the award of
online research costs), amended and superseded on other grounds
by, 522 F.3d 182 (2d Cir. 2008); Kuzma v. I.R.S., 821 F.2d 930,
933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements
for items such as photocopying, travel, and telephone costs" are
compensable); Duke v. Cnty. of Nassau, No. 97-CV-1495 (JS), 2003
WL 23315463 at *6 (E.D.N.Y. Apr. 14, 2003) ("Courts have continu-
ously recognized the right for reimbursement of costs such as
photocopying, postage, [and] transportation."); Tri-Star Pic-
tures, Inc. v. Unger, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999)
(Edelstein, D.J.) (same).

---

[18](...continued)
total $185.31.

37

Additionally, as is the case with its request for fees, Balber Pickard is seeking reimbursement for only certain costs billed to Shanachie throughout the relevant time period.  Thus, Balber Pickard is not seeking wholesale reimbursement for every cost billed to Shanachie.  As a result of this, the universe of potentially reimbursable time entries has been narrowed considerably at the outset.  Thus, Balber Pickard is entitled to recover $459.36 in costs.

2.  <u>Melvin L. Reddick, Esq.</u>

Reddick has submitted a typed list of his time entries during the relevant time period, indicating the date on which the work was completed, the number of hours expended on the work and the nature of the work done (<u>see</u> Reddick Decl. ¶ 13; Ex. A to Reddick Decl.).  He does not seek reimbursement for any costs. Reddick states that the typed list reflecting his time entries is "based on [his] records, which were kept contemporaneously with the services as rendered"[19] (Reddick Decl. ¶ 13).  Reddick also

---

[19]In applying for fees and costs, "any attorney . . . must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done."  <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983).  Transcriptions of contemporaneous time records containing the above information have been found to satisfy this
(continued...)

breaks down the amount of time that he spent on various tasks into tenths of an hour segments (see Reddick Decl. ¶ 12). Plaintiff does not challenge any specific entry or group of entries.

I first note that Reddick's statement of hours spent on plaintiff's case does not correspond to his billing records in Exhibit A.  For example, Reddick states that he performed 8.3 hours of work from November 1, 2010 through January 31, 2011 (see Reddick Decl. ¶ 16); however, the time records offered for this time period show only 3.75 hours performed.  Additionally, Reddick states that he performed 5.2 hours of work during February 2011 (see Reddick Decl. ¶ 17); however, the time records offered show only 3.4 hours performed.  Thus, after making the appropriate adjustments, Reddick's time records show a maximum of 7.15 potentially compensable hours.

---

[19](...continued)
requirement.  See, e.g., Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, supra, 34 F.3d at 1160 (accepting a "typed listing of [attorneys'] hours from their computer records," in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records"); see also Tri-Star Pictures, Inc. v. Unger, supra, 42 F. Supp. 2d at 302-03.  Thus, Reddick's time records, though they appear to be a transcription of contemporaneous billing records, are sufficient for purposes of his fee application.

After a review of the time records, I conclude that a reduction in the amount of hours for which Reddick seeks compensation is appropriate.  The majority of Reddick's time entries are vague or incomprehensible.  Specifically, 10 out of the 22 time entries that are potentially compensable read either:  "Case status discussion with Maldonado," "Case update with Maldonado," "Case status discussion with Harper" or "Case status report with Harper."[20]  Thus, for the same reasons as discussed with Balber Pickard's time entries and because approximately half of Reddick's time entries are problematic, I conclude that the hours for which Reddick is compensated should be cut by 50%.

D.   Calculation of
     Fees and Costs

Based on the foregoing, Balber Pickard is entitled to recover the following amounts in fees and costs. With respect to attorneys' fees, Balber Pickard is awarded compensation in the amount of 31.825 hours (24.6 hours attributable to Maldonado at a rate of $395.00 per hour and 7.225 hours attributable to Ginns at a rate of $265.00 per hour) -- which

_____

[20]See, for example, the time entries for the following dates:  November 15, 2010; November 16, 2010; December 16, 2010; December 20, 2010; January 6, 2011; January 10, 2011; January 12, 2011; January 31, 2011; February 4, 2011 and February 10, 2011.

yields an overall figure of $11,631.63.  With respect to costs, Balber Pickard is awarded $459.36.

Based on the foregoing, Reddick is entitled to recover the following amount in fees.  Reddick is awarded compensation in the amount of 3.575 hours at a rate of $300.00 per hour -- which yields an overall figure of $1,072.50.

Finally, I am aware of the fact that since this fee application was made, plaintiff has been awarded summary judgment on the issue of liability against Shanachie and Nesby.  There is, however, no inconsistency between an award of sanctions against plaintiff and the grant of summary judgment in her favor.  As should be evident from their name, the Federal Rules of Civil Procedure are <u>rules</u> which apply to all litigants, regardless of whether they ultimately prove to be the winning party or the losing party.  If a party could ignore its discovery obligations based on the belief that it would ultimately prevail on the merits, civil litigation would quickly degenerate into chaos. The very notion of a judicial system with one set of rules for winning parties and a different set of rules for losing parties is absurd on its face.  <u>See</u> <u>generally</u> <u>Mohasco Corp. v. Silver</u>, 447 U.S. 807, 826 (1980) ("[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by

41

the legislature is the best guarantee of evenhanded administra-
tion of the law.").

In addition, the Federal Rules of Civil Procedure have
not been used as a trap against plaintiff.  As detailed in my
Opinion and Order in this matter dated December 12, 2011, plain-
tiff's discovery obligations were repeatedly and carefully
explained to her, and she was given multiple opportunities to
comply with those obligations.  It was only after her repeated
failures to comply that sanctions were imposed, and the sanctions
that were imposed were not the harshest sanctions available to
me.  It is unfortunate that plaintiff, who has the winning case,
has cost herself a substantial amount of money through her
recalcitrance in discovery.  However, it is not the job of a
judge to save a litigant from making her own mistakes.  Having
chosen to disregard her discovery obligations, plaintiff must now
live with the consequences.

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I find that

(1) Balber Pickard is awarded $11,631.63 in fees and $459.36 in costs and (2) Reddick is awarded $1,072.50 in fees.

Dated:  New York, New York
        May 02, 2012

                              SO ORDERED


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Ms. Peggy Harley
Apt. 6-B
40-15 12th Street
Long Island City, New York   11101

Ms. Ann Nesby
Suite 6, #103
1200 Highway 74 S.
Peachtree City, Georgia   30269

Mr. Timothy W. Lee
Suite 6, #103
1200 Highway 74 S.
Peachtree City, Georgia   30269

Roger J. Maldonado, Esq.
Balber Pickard Maldonado
   & Van Der Tuin, PC
1370 Avenue of the Americas
New York, New York   10019

Melvin L. Reddick, Esq.
Suite 1609
74 Trinity Place
New York, New York   10006

43